IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AUDRA MOORE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-2961-BK |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Pursuant to the parties' consent to proceed before the magistrate judge (Doc. 10), this case has been transferred to the undersigned for final ruling. For the reasons discussed herein, Plaintiff's *Motion for Summary Judgment* (Doc. 18) is **DENIED**.

### I. BACKGROUND[1]

**A.   Procedural History**

Plaintiff seeks judicial review of a final decision by the Commissioner denying her claim for Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). Plaintiff filed for SSI, claiming that she has been disabled since July 2005. (Tr. 127). Her application was denied at all administrative levels, and she timely appealed to this Court pursuant to 42 U.S.C. § 405(g). (Tr. 4, 17, 50-52, 55, 82-84).

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

1

B.   **Factual History**

Plaintiff was 31 years old when she filed her SSI application, and she had a high school education and past relevant work history as a home health provider. (Tr. 28, 165). As relevant to the arguments before the Court, in July 2005, Plaintiff was diagnosed with severe recurrent major depressive disorder. (Tr. 295). Progress notes from October 2005 to August 2006 listed Plaintiff's symptoms as low to moderate levels of mania, depression, irritability, mood lability, agitation, anxiety, insomnia, interest, and energy. (Tr. 326-32). Nevertheless, she responded fairly well to her medication, and her overall functioning was on the high side. (Tr. 326, 328, 330-31).

Quarterly progress notes from Lakes Regional MHMR Center from December 2006 to September 2007 indicated that Plaintiff had low to moderate symptoms of depression, anxiety, agitation, mood lability, and irritability. (Tr. 512-34). Plaintiff was diagnosed with major depressive disorder and assessed a GAF of 45, but was functioning at a fairly high level and responding quite well to her medication.[2] (Tr. 512, 515-16, 518, 522, 527, 529, 533).

In January 2007, Plaintiff underwent a consultative examination with psychologist Dr. Ronald Anderson. (Tr. 379). Plaintiff stated that she had suffered from bipolar disorder and depression since 1993, which caused her to act "mean and hateful" to the patients she worked with. (Tr. 380). She reported constant suicidal ideation and rated her depressed feelings as an eight out of ten. (Tr. 381-82). When asked to describe any manic episodes, Plaintiff was unable to do so. (Tr. 382). Dr. Anderson noted that his examination findings were not sufficient to

---

[2] GAF stands for Global Assessment of Functioning, and is a scale used to determine a patient's psychological functioning on a 1 to 100 scale, with 100 being superior functioning. *Diagnostic and Statistical Manual of Mental Disorders IV-TR* (4th ed.).

diagnose Plaintiff with either major depression or bipolar disorder, as he would need her mental health records to establish those diagnoses. (Tr. 382). Nevertheless, Dr. Anderson did diagnose Plaintiff with dysthymic disorder and adjustment disorder with mild anxiety and assessed her a GAF of 50-55. (Tr. 382-83.)

In February 2008, Plaintiff underwent Millon Clinical Multiaxial Inventory III testing ("MCMI") with psychologist Dr. George Mount. (Tr. 624). Dr. Mount noted that her testing was consistent with PTSD and chronic pain disorder (with prominent hypochondriacal features), suggestive of schizophrenia, and that she was also depressed. (Tr. 623, 631). Plaintiff's prognosis was guarded, and Dr. Mount assessed a GAF of 35. (Tr. 623). Dr. Mount stated, however, that Plaintiff's response style may indicate a tendency to magnify illness and an inclination to complain, which could result in exaggerated test scores. (Tr. 625, 627). The MCMI indicated that Plaintiff fit the Axis II classifications best, which are paranoid personality disorder, schizotypal personality disorder, and borderline personality disorder with passive-aggressive personality traits. (Tr. 625, 631). Dr. Mount found that Plaintiff was experiencing the clinical symptoms of a paranoid delusion disorder, evinced an agitated major depression as evidenced by her moodiness and vacillation, and appeared to be experiencing a severe psychotic episode, perhaps as a phase of an extended schizophrenic course. (Tr. 628). Further, Plaintiff was unstable, touchy, abusive, and prone to outbursts of rage. (Tr. 627-28).

**C.**     **The ALJ's Findings**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 2006, the date she filed her SSI application. (Tr. at 22). At step two, the ALJ found that Plaintiff's musculoskeletal disorders and depression were medically determinable

3

severe impairments that significantly limited her ability to work. (Tr. 22). At step three, the ALJ found that Plaintiff's impairments did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. (Tr. 23). The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, and she could (1) understand, remember and carry out simple instructions; (2) make judgments commensurate with the functions of unskilled work, i.e., simple work-related decisions; (3) respond appropriately to supervisors, co-workers, and usual work situations; and (4) deal with changes in a routine work setting. (Tr. 24). Further, the ALJ found that Plaintiff could occasionally have contact with co-workers, but only incidental contact with the general public. (Tr. 24). At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work, but proceeding to step five, she could perform other work available in significant numbers in the national economy, such as assembler and packer. (Tr. 28-29).

The ALJ considered Dr. Mount's opinion but gave it very little weight, noting that (1) Dr. Mount had "declined to provide the 42 Grossman facet scale scores," and (2) it was not possible to independently evaluate his interpretations on the structural and function personality features specified by the MCMI, because the MCMI is based on theory and not particularly useful in the determination of disability. (Tr. 27). The ALJ also noted that the MCMI had been criticized for its "susceptibility to bias in the interpretive phase," and the test results likely did not meet the *Daubert* standard for admissibility or constitute medically acceptable evidence. (Tr. 27). Additionally, the ALJ noted that Dr. Anderson's examination revealed only moderate limitations caused by Plaintiff's mental health symptoms. (Tr. 26). Moreover, the ALJ noted (1) Plaintiff's high level of daily activities, (2) that Plaintiff had failed to tell her ex-husband that their child

was living with his stepfather while she continued to collect child support, (3) Plaintiff had stated in October 2007 that she did not want to work, and (4) Plaintiff had only worked sporadically prior to her alleged disability onset date. The ALJ stated that these factors all suggested that Plaintiff was not a reliable witness and may be able to do more than she reported. (Tr. 26-28).

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled:  (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his or her burden under the first four steps, the

burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III. ARGUMENTS AND ANALYSIS

Plaintiff argues that the ALJ's rejection of the MCMI testing performed by Dr. Mount is error and is contradicted by the Commissioner's own policies and procedures. (Doc. 18 at 14-15). She maintains that the ALJ did not find that her personality disorders, PTSD, schizophrenia, or chronic pain disorders were severe, and in fact, failed to mention those disorders other than to dismiss them along with the rest of Dr. Mount's opinions. *Id.* While acknowledging that the ALJ did limit her to simple, unskilled light work with limited contact with coworkers and the public, Plaintiff urges that those limitations do not reflect the extent of the limitations opined by Dr. Mount. *Id.* at 14-15. Further, Plaintiff contends that the ALJ's contention that Dr. Mount

"declined" to provide the 42 Grossman facet scale scores is meritless as there is no indication in the record that the ALJ requested those scores or that Dr. Mount refused to provide them. *Id.* at 15. Plaintiff also points out that the Commissioner's Program Operation Manual System ("POMS") recognizes the MCMI as a diagnostic technique that may be used to determine benefits eligibility, yet the ALJ made no reference to the POMS and instead impermissibly substituted his lay opinion for Dr. Mount's opinion, resulting in an inaccurate RFC and prejudice to Plaintiff's case. *Id.* at 16-19.

Defendant responds that, as an initial matter, the ALJ's failure to mention Plaintiff's alleged diagnoses of personality disorder, PTSD, schizophrenia, and chronic pain disorder was supported by substantial evidence because Plaintiff did not list those impairments in her SSI applications. (Doc. 20 at 6, 10-11). As to Plaintiff's complaints about the ALJ's refusal to give the MCMI test sufficient weight, Defendant points out that Dr. Mount himself stated that (1) the report could not be considered definitive, (2) the diagnostic criteria used in that test differed from that used in the DSM-IV, (3) Plaintiff's results might not be valid because she indicated a tendency to magnify illness, and (4) Plaintiff was usually able to function on a satisfactory basis, but could experience periods of dysfunction. *Id.* at 7, 9-10. Further, Defendant urges, the ALJ was not required to point to objective medical evidence contradicting Dr. Mount's findings. *Id.* at 7-8. Rather, it was Plaintiff's burden to show that she was disabled, and she failed to do so as demonstrated by the record evidence which indicates that (1) Plaintiff's mental impairments did not cause significant functional limitations; (2) Plaintiff refused to attend weekly psychological treatment from 2008 to 2010 and stated that she was getting better in 2010; and (3) Plaintiff did not complain of, or seek treatment for, the severe impairments Dr. Mount found. *Id.* at 8, 10-11.

Additionally, Defendant notes that the ALJ found Plaintiff's testimony to be unreliable because she withheld vital information regarding child support from her child's father and his attorney, and thus he did not accord substantial weight to Dr. Mount's opinions, which were based on Plaintiff's responses to 175 true/false items on the MCMI.  *Id.* at 10.  More importantly, Defendant urges, the ALJ permissibly resolved conflicting medical opinions by relying on the consultative mental examination by Dr. Anderson, who concluded that (1) Plaintiff's mental examination findings were not sufficient to establish that she had major depression or bipolar disorder, and (2) her GAF score of 50 to 55 indicated only moderate limitations.  *Id.* at 11-12.

In pertinent part, Plaintiff replies that while she did not specifically allege in her SSI applications that she suffered from anxiety disorder, PTSD, schizophrenia, or chronic pain disorder, the symptoms that she alleged are consistent with those diagnoses.  (Doc. 21 at 2).  Further, she points out that she was repeatedly treated for agitation and anxiety, which are symptoms of an anxiety disorder, such as PTSD.  *Id.* at 3.  Plaintiff thus urges that the ALJ's finding that her only mental impairment was depression is not supported by the record.  *Id.*

Unless he gives a treating physician's opinion controlling weight, the ALJ must explain the weight he gave the opinions of an examining source such as Dr. Mount.  20 C.F.R. § 416.927(e)(2)(ii).  The ALJ is entitled to determine the credibility of medical experts and to weigh their opinions accordingly.  *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).  An ALJ may reject the opinion of any physician where the evidence supports a contrary conclusion.  *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995).  The ALJ has the sole responsibility for evaluating a claimant's RFC based on the record as a whole and resolving conflicts in the evidence.  *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).  The ALJ must

consider the limiting effects of all of the claimant's impairments, even those that are not severe, when determining a claimant's RFC finding.  20 C.F.R. § 416.945(e).  A claimant's failure to mention specific impairments at the hearing is not dispositive of the ALJ's obligation to consider all of the medical evidence in the record and any impairments that have significant supporting evidence.  *See Williams v. Astrue*, 2010 WL 517590 at *6 (N.D. Tex. 2010) (Fitzwater, C.J.). Nevertheless, the harmless error doctrine applies in Social Security disability cases, and procedural perfection is not required as long as the claimant's substantial rights have not been affected by an ALJ's error.  *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1998).

As an initial matter, the ALJ's decision whether to accept the results of the MCMI was within his discretion.  POMS Section DI 33535.001 (providing that the POMS contain a cumulative list of the medical diagnostic or evaluative or tests, which the Commissioner *may* use in determining a claimant's eligibility for benefits).  The ALJ in this case indicated that he had weighed the medical evidence provided by Plaintiff's treating physicians, examining physicians, and State agency medical consultants in concluding that Plaintiff's mental impairments did not meet or equal a Listing.  (Tr. 23).  Next, the ALJ conducted an RFC assessment, reflecting the degree of limitation that he found Plaintiff had.  (Tr. 23-24).  The ALJ also noted a prior medical opinion, as well as Plaintiff's testimony, that Plaintiff suffered from bipolar disorder and noted Dr. Mount's opinion that Plaintiff suffered from PTSD, schizophrenia, and chronic pain disorder. (Tr. 25-26).  The evidence thus indicates that the ALJ was aware of all of Plaintiff's alleged mental impairments, considered them in reaching his RFC based on the record as a whole, and he did not have to accept the results of Plaintiff's MCMI.  *Chambliss*, 269 F.3d at 522; POMS § DI 33535.001.

Substantial evidence also supports the ALJ's determination to not give significant weight to Dr. Mount's opinions, which were at odds with Dr. Anderson's opinion and Plaintiff's treatment notes from 2006 to 2007. (Tr. 379-83, 512, 515-16, 518, 522, 527, 529, 533) (stating that Plaintiff was functioning at a fairly high level and responding quite well to her mental health medications). The ALJ acted within his discretion in weighing Dr. Mount's opinions against the other medical evidence of record and resolving the conflicts that the evidence presented. *Chambliss*, 269 F.3d at 522*; Scott*, 770 F.2d at 485. Further, even if the ALJ did err in finding that Dr. Mount "refused" to provide the 42 Grossman facets, this error did not prejudice Plaintiff because the ALJ's decision to discount Dr. Mount's opinion was supported by other reasons as well, including that (1) the MCMI on which Dr. Mount relied had been criticized and (2) Dr. Mount stated that Plaintiff indicated a tendency to magnify illness and complain, which could result in exaggerated test scores. *Morris*, 864 F.2d at 335; (Tr. 27, 625, 627). Accordingly, Plaintiff's argument that the ALJ impermissibly substituted his lay opinion for Dr. Mount's opinion, resulting in an inaccurate RFC, is meritless.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment* (Doc. 18) is **DENIED**. Nevertheless, because Defendant did not cross-move for summary judgment, as this Court's scheduling order specifically directed (Doc. 16 at 2), the undersigned is unable to grant summary judgment in Defendant's favor and enter final judgment. Accordingly, Defendant is ordered to file a *Motion for Summary Judgment* within seven days of the date of this order so that

the case can be closed.

    **SO ORDERED** on May 16, 2012.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE